## HENRY R. MORRILL vs. MARIA ATWOOD.

A husband and wife, married in 1866, in 1882 entered into a written agreement under the provisions of the act of 1877 with regard to the property rights of husband and wife, by which they made the act applicable to themselves and relinquished their mutual rights under the law as it stood before that act was passed. The husband further agreed to accept certain personal property in lieu of the share of his wife's property which he would have become entitled to under the act if he had survived her. At the time of their marriage the wife owned a farm, with some stock and farming implements upon it, and the husband, who had no property of his own, had lived on the farm and cultivated it ever since. In a suit afterwards brought by an assignee of the husband's rights against the wife for the stock and other personal property on the farm, it was found that he had occupied the farm with her con-

sent and from the rents and profits, in connection with his own labor, had become the owner of the property claimed, except so far as his title was affected by the agreement.   Held—

1. That the finding must be construed as meaning that he had acquired the property in question from the use of his wife's property as trustee of it under the law then in force.

2. That the contract must be construed as meaning that the statute of 1877 should apply to the case as if it had existed at the time of their marriage, and that consequently all that he had derived from the use of the property as trustee of the wife was relinquished by it.

[Argued March 6th—decided July 3d, 1885.]

ACTION to recover certain horses and farm stock, carriages and wagons, and sundry other articles of farm and domestic use ; brought to the Superior Court in Litchfield County.   Facts found by a committee and the case reserved for advice.   The facts are sufficiently stated in the opinion.

*H. B. Graves*, for the plaintiff.

*C. W. Gillette* and *W. H. Williams*, for the defendant.

CARPENTER, J.   The subject of this suit is personal property on a farm owned by the defendant.   The plaintiff represents the husband of the defendant, who is the real party in interest.   The parties lived together as husband and wife on this farm for a period of sixteen years.   They then separated by mutual consent, after having executed and recorded a written agreement pursuant to section five, chapter 114 of the session laws of 1877, by which the parties were brought within the provisions of that act.*   The

---

* The statute of 1877 provided that in all marriages thereafter contracted neither husband nor wife should acquire, by force of the marriage, any right to or interest in the property of the other, except a certain share in case of survivorship.   The fifth section then provided as follows, with regard to then existing marriages :—

"In the case of marriages already existing any husband and wife may, during the marriage, enter into a written contract with each other for the mutual abandonment   of all rights of either in the property of the other under existing statutes or at common law, and for the acceptance, instead thereof, of the rights given by this act ; which contract shall be recorded in the probate court of the district and in the town clerk's office of the

husband then and there received a certain amount of personal property, which was agreed to be in lieu of the statu-

town in which they reside. And upon such contract being so made and recorded the provisions of this act shall apply to such marriage in the same manner as to marriages hereafter contracted."

The contract between the husband and wife in the present case was as follows:—

"This agreement made and entered into by and between Oliver W. Atwood and Maria Atwood, both of the town of Watertown, in the county of Litchfield, and state of Connecticut, husband and wife, under the provisions of the statute law of this state, entitled An Act in Alteration of the Act concerning Domestic Relations, approved March 16th, 1877, witnesseth—

"That whereas the parties hereto were married prior to the passage of the act aforesaid, to wit: on the 1st day of February, 1866, and therefore are not embraced under the provisions of said act, without entering into a written contract with each other, as in said act provided; and whereas the parties hereto, severally and mutually, desire to avail themselves of the provisions of said act, and severally and mutually to accept rights given by said act:—Now, therefore, in consideration aforesaid, the undersigned do make and enter into this written contract with each other, for the mutual abandonment of all rights of either in the property of the other under existing statutes or at common law, and hereby do mutually abandon all rights of either in the property of the other under existing statutes or at common law, and do, mutually as aforesaid, accept, instead thereof, the rights given by said act first aforesaid; provided, however, that this shall not in any manner entitle said Oliver W. Atwood to any statutory share in or to the estate of said Maria Atwood, in case he survive her, he receiving herewith, under the terms of this written contract, from her, certain property and estate in lieu of such statutory share.

"And whereas it is further desired and intended that said Oliver W. Atwood shall not be entitled to, nor receive, any property, estate or sum, as or on account of said statutory share in said Maria Atwood's estate, in case he survive her:—Now therefore, to that end and for such purpose, and in consideration thereof, the said Maria Atwood doth hereby transfer and release all her right, title and interest, legal or equitable, in the property hereinafter described, to said Oliver W. Atwood, to wit: one black horse, one buggy, one harness, one buffalo robe, one horse blanket, one whip; also seven hundred and twenty-five dollars in money; and further, in consideration hereof, agrees to pay to her daughter, Ruth Atwood, a minor, such sum or sums as may be due her on her arrival at her majority, from said Oliver W. Atwood, or on his account; also to pay to the estate of Oliver Curtiss, late of Middlebury in New Haven County, deceased, the sum of one hundred and fifty dollars, with the interest accrued, and to save said Oliver W. Atwood harmless therefrom, in lieu of said Oliver's statutory share, as aforesaid.

"And in consideration of the sale, transfer and delivery of said property and money, and the assuming and agreement to pay the several sums aforesaid by the said Maria Atwood, (the execution, delivery and receipt of

tory share in the property of the wife which he would have been entitled to in case he should survive her. In all other respects the rights of each in the property of the other were, by the agreement, to be determined by the provisions of the act.

Now it will be observed that the act expressly deprives the husband of any interest whatever in the property of the wife except a share in it in case he survives her. Of course his interest was contingent, and in consideration of receiving a portion of the property to be presently enjoyed he relinquished all his right to any part of her property under that act or under the law as it previously existed. Under prior laws his right was not an absolute one, but he simply held the property as trustee. The trust carried with it certain duties and responsibilities, of which he was relieved by the agreement.

In respect to this property the finding is, that upon the marriage the husband " took possession of her real and personal estate, (excepting her choses in action,) and thereafter until the 23d day of May, 1882, with her knowledge and consent, occupied, used and disposed of the same, and from the rents, income and profits of the property of which he was so possessed, in connection with his own labor, he, on said 23d day of May, 1882, had become and was the owner of the personal estate mentioned in the plaintiff's complaint, and continued to be such owner until he assigned the same to Henry R. Morrill on the 1st day of March, 1883, as hereinafter mentioned, except so far as his title thereto was affected, (if affected at all,) by the agreement."

which, all and singular, the said Oliver W. Atwood hereby acknowledges to his full satisfaction), he, the said Oliver W. Atwood, hereby covenants and agrees to and doth hereby accept, acknowledge and receive said property, moneys and agreements aforesaid, in lieu of his said statutory share in the said Maria Atwood's estate as aforesaid.

In testimony whereof the parties have hereunto set their hands and seals, this 25th day of May, 1882.        OLIVER W. ATWOOD.   [L. s.]
                                                          MARIA ATWOOD.       [L. s.]

(Witnessed by two witnesses and acknowledged before a justice of the peace, and recorded in the probate office of the district and the town clerk's office.)

How are we to interpret this finding ? Does it mean that he owned the property in his own right, or that he owned it as trustee for his wife ? This question is a vital one ; for if he owned it in his own right, he did not relinquish it by the agreement ; but if he owned it as trustee, if it was property which he had acquired in right of his wife, then his right to it was relinquished by the agreement.

If we take the clause, "had become and was the owner of the personal estate mentioned in the complaint, &c.," separate it from the rest of the sentence, and interpret it by itself, we should conclude that the husband was the absolute owner of the estate. But we should hardly be justified in resorting to that method of interpretation. We must take the language in its connection, having due regard to the subject-matter and the attending circumstances. As a part of the same sentence the committee was careful to give the three-fold origin of the property,—" from the disposal of the wife's real and personal property, from the rents, income and profits of the same, and from his own labor in connection therewith." How much of the real and personal estate was disposed of, how much it all yielded as rents, income and profits, and how much his personal labor amounted to, are matters which do not appear and which we have no means of determining. It seems to be a case of voluntary commingling of his own labor, in such a manner that it is difficult, if not impossible, to separate it, with the estate of the wife. In such a case, especially where creditors are not concerned, there is no presumption in favor of the husband against the wife. The fact is clearly found that her estate and her property interests were elements entering largely into the production of the property in dispute. So far as that estate was personal property and rents and income it was property entirely within his control, and her consent to it is a matter of little or no importance. So that, taking all the finding together, it is difficult to see how the wife's interest can be adequately protected without coming to the conclusion that he held the property as trustee for her.

If we inquire as to the probabilities, as gathered from the nature of the property and the attending circumstances, we shall reach the same conclusion. The property consists mainly of live stock, carriages, carts and farming utensils, farm products, dairy implements, and household goods. Most of the property is such as we should expect to find on such a farm, and would seem to be essential to its successful management. The husband married and went on to the farm "comparatively poor and destitute of property." It was his duty to support his family, and perhaps we may with propriety say that his labor constituted no more than a reasonable contribution from him for that purpose. Perhaps we may presume also that he found as much on the farm as he left there. There is no finding on that subject, and if there is any presumption it is against the plaintiff, as the burden of proof is on him. In that view of the case it is not easy to see how he acquired an absolute title to all this property,—while the case clearly shows how he acquired a title as trustee.

This view of the nature of the husband's title is strongly corroborated by the conduct of the parties. The contract clearly shows that the parties supposed they were contracting with reference to some property which the husband held as trustee, and the case fails to show that there was any such property unless the property in question was of that description. It also appears by the contract that a part of the property which he received in lieu of his statutory share was in certain articles of personal property, in respect to which it is found that they "were a part of the property on the defendant's farm." Here is a distinct recognition of that as belonging to the wife, and an implication more or less strong that all of it was hers.

There is also a strong presumption that the parties intended to dispose of all their differences of whatever kind or description. In the separation, which was apparently final, they doubtless intended then and there to settle all questions then existing or which could thereafter arise in respect to the property. It is incredible that they should

leave so large an amount of property open to question. We see no reason to suppose that the wife would be willing to abandon all this property, in which she manifestly had so large an interest, while we can see obvious reasons why the husband should be willing to abandon it to the wife. Hence we regard the result of the contract as an abandonment of all his marital rights, and an agreement that the statute of 1877 should apply to them precisely as if that statute had been in force at the time of the marriage.

The property was on the farm and in the house; the house and farm were left in her possession; and it would require positive, unequivocal proof to satisfy the mind that she intended or that he expected that they should be stripped of the personal property. He went away taking with him some property which was confessedly his, and left in her possession the property in dispute; and it was not until some time afterwards that he made any claim to it. It looks very much like an afterthought.

From all these considerations we are satisfied that the import of the finding is, that he owned this property, not in his own right but as trustee, and that by the contract he relinquished all his right to it to his wife. That being so he had no title to convey to the plaintiff, and the defendant is entitled to judgment.

The Superior Court is advised accordingly.

In this opinion PARK, C. J., and SANFORD, J., concurred. LOOMIS and GRANGER, Js., dissented.